UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAIN DAVID BARTON,

   Plaintiff,     CASE NO. 16-CV-13898
             HON. GEORGE CARAM STEEH
v.

OFFICER DEAN VANN,

   Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S**
**<u>MOTION FOR SUMMARY JUDGMENT (Doc. 28)</u>**

  This 42 U.S.C. § 1983 illegal entry, wrongful arrest, excessive force, and retaliatory arrest suit arises out of Defendant Dean Vann's warrantless arrest of Plaintiff Dwain Barton in his home for animal cruelty after Barton shot his gun in a residential area at his neighbor's cat and refused to cooperate with the police officers and an animal control officer when they arrived at his home to investigate the matter. Barton also brings state law claims of unreasonable search and seizure, assault and battery, false arrest and imprisonment, and malicious prosecution. Now before the court is Officer Vann's motion for summary judgment. For the reasons set forth below, Defendant's motion shall be granted.

## I. Factual Background

The court construes the factual allegations in the light most favorable to the nonmoving party, here, Barton. On November 3, 2014, Barton shot his bb gun at a neighbor's cat in his backyard. He claims he missed the cat but hit a pole on his daughter's trampoline. He then went to the home of his neighbor, Jill Porter, who lived a few doors down because he knew that she was in the habit of feeding feral cats in the neighborhood. Her habit was a bone of contention between the two, and he had called the Lincoln Park police on numerous occasions to complain about her feeding of the cats. While holding his gun, he threatened Porter that "the next time I see a cat in my yard attacking my children, it will be a dead one." Porter then telephoned the Lincoln Park police and reported that Barton had shot her cat in the head.

Animal control officer Adam Manchester[1] responded to Barton's home to investigate. According to Manchester's deposition testimony, after speaking to one of Barton's relatives, Barton eventually came to the door and admitted to shooting a cat. Barton disputes this claim, and contends that he denied hitting the cat, but told Manchester that he had hit a trampoline pole with his bb gun. Barton refused to show his identification

---

[1]Manchester was named as a defendant, but has been dismissed.

and ordered Manchester off his property. According to Barton's wife, Jennifer Barton, he may have used profanity towards Manchester. Feeling threatened, Manchester returned to his vehicle and requested back up assistance. All Lincoln Park police officers on duty responded to the scene because of the report that an armed individual was refusing to cooperate.

This was not Barton's first encounter with the Lincoln Park Police. In 2012, Lincoln Park police responded to a complaint by Barton's prior employer, Verizon Wireless, who had recently terminated him, that Barton had threatened to fight everyone working there and to vandalize their cars. In June, 2016, Lincoln Park police responded to a complaint that Barton was shouting profanities at his neighbor. Also, in 2012, Lincoln Park police responded to a report by Porter that Barton had threatened to shoot her.

Returning now to the date of the incident in question, after police arrived on the scene, one of the officers approached Barton's front door and spoke to his mother-in-law telling her of a report that a man was shooting animals with a gun and refusing to come outside. She denied these allegations. While the officers were on the front porch, there were several family members present, who according to Officer Vann, were shouting profanities at the police. Barton remained behind the screen door, although he would walk back and forth between the front door and the

kitchen. The officers asked Barton to come outside and to produce identification but he refused, ordered the officers to leave, and retreated into his house. Barton's wife walked in and out of the house repeatedly. According, to Officer Vann, this conduct made the officers feel threatened that she might be procuring a weapon.

The officers then told Barton he was under arrest for animal cruelty and asked him to come outside, but he retreated further into the house. According to Officer Vann's deposition testimony, he feared for his own safety and that of his fellow officers that Barton was going to get his firearm and thus, entered Barton's home to arrest him. According to Barton's deposition, Officer Vann then removed the front door screen, entered the home, arrested Barton, and placed him in handcuffs. Barton was taken away in a patrol car and was released on bond several hours later. He was charged with misdemeanor animal cruelty, but the charges were later dismissed. Barton claims his handcuffs were too tight, and that he injured his shoulder and elbow during his arrest. Barton has not submitted any medical evidence in support of his claimed injuries, but relies solely on his deposition testimony.

## II. Standard of Law

Federal Rule of Civil Procedure 56(c) empowers the court to render

summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of *some* alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial."  *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

### III. Analysis

Barton alleges four claims under § 1983: (1) illegal entry (2) wrongful arrest, (3) excessive force, and (4) retaliatory arrest.  Officer Vann argues he is entitled to qualified immunity on all claims because there were no

constitutional violations.  Qualified immunity "'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Stanton v. Sims*, 571 U.S. 3, 4–5 (2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  It protects all officers except "the plainly incompetent or those who knowingly violate the law."  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citation and internal quotation marks omitted).  As the Supreme Court has explained, "[t]his accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued."  *Id.* (citation omitted).  Indeed, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments."  *Stanton*, 571 U.S. at 5 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quotation marks omitted)).

The court employs a two-step inquiry in deciding qualified immunity questions.  *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015).  "'First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred?  Second, was the right clearly established at the time of the violation?  These prongs need not be considered sequentially.'"  *Id.* (citation omitted). The court considers each

claim below.

## A. Illegal Entry under the Fourth Amendment

The court first analyzes whether Officer Vann is entitled to summary judgment on Collins' illegal entry claim brought under § 1983. The law is well settled that a police officer's entry into a home without a warrant is presumptively unconstitutional under the Fourth Amendment. *Johnson v. City of Memphis*, 617 F.3d 864, 868 (6th Cir. 2010). "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Id* (citations omitted)*.* "Warrantless entries are permitted, however, where 'exigent circumstances' exist." *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (citations omitted). Exigent circumstances have been recognized in a number of instances, usually in one of three ways: "(1) when the officers were in hot pursuit of a fleeing suspect; (2) when the suspect represented an immediate threat to the arresting officers and public; (3) when immediate police action was necessary to prevent the destruction of vital evidence or thwart the escape of known criminals." *Id.* Officer Vann argues the first two types of exigent circumstances apply in this case. Because the court finds that exigent circumstances existed based on the immediate threat Barton posed to the arresting officers, the

court does not address the hot pursuit exception, but notes that that exception does not appear to pertain to the circumstances presented here.

Ordinarily, the existence of exigent circumstances is a question for the jury, but when there is only one conclusion that can be reached based on the facts presented, then the issue may be decided as a matter of law. *Id.* Also, the relevant inquiry is whether the facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed. *Id.*

The facts of this case are largely analogous to those in *Causey v. City of Bay City*, 442 F.3d 524 (6th Cir. 2006). In that case, the Sixth Circuit found that exigent circumstances existed which justified a warrantless entry where the police responded to a 911 call reporting that six shots had been fired in the backyard of a house on New Year's Eve. Despite a report from neighbors that the occupants had fired shots on New Year's Eve and the Fourth of July in the past without incident, and despite the inhabitants of the home telling the police through an open window that they were fine, and despite the lack of any evidence to the contrary, the Sixth Circuit upheld the warrantless entry because it was reasonable for the officers to be concerned about the safety of the inhabitants of the home given that shots had been fired. *Id.* at 531. The Sixth Circuit held that an

exigency exists when officers have a reasonable belief that the suspect has a weapon, and can demonstrate that the suspect has a willingness to use it. *Id.* at 527-29.

Likewise, in *United States v. Ponder*, 240 F. App'x 17 (6th Cir. 2007), the Sixth Circuit found exigent circumstances existed when an individual whose car had been seriously vandalized alleged that the perpetrators had also fired shots on him and led police to the home of his alleged assailants. *Id.* at 18. Once there, the alleged victim identified his assailants who were sitting on the front porch, but they retreated into the house when the police approached. *Id.* The Sixth Circuit found that exigent circumstances justified the warrantless entry because the victim represented that the defendants were the ones who had fired shots at him less than an hour earlier; thus, it was reasonable for the officers to fear for their own safety or that of others. *Id.* at 20.

Similarly, in this case, the officers had been told that Barton was armed and had shot or shot *at* a cat in his backyard in a residential neighborhood. The scene was very animated as numerous family members were on the front porch shouting at the police; Barton himself shouted at the police and ordered them to leave, and Barton refused to speak to the police and retreated into his home, leaving the officers fearful

that he was attempting to retrieve a weapon. Under these circumstances, it was reasonable for Officer Vann to believe that Barton was armed, and that he was willing to use his weapon to harm the officers or others. As the Sixth Circuit has recognized, "[p]olice are not required to wait for injury or death to occur in their presence before acting to protect people from a gunman who has amply demonstrated his propensity to use his weapon." *United States v. Johnson*, 106 F. App'x 363, 368 (6th Cir. 2004). Accordingly, Officer Vann is entitled to qualified immunity and summary judgment on the illegal entry claim in violation of the Fourth Amendment

### B. Wrongful Arrest under the Fourth Amendment

The court next considers whether Officer Vann is entitled to qualified immunity on Barton's wrongful arrest claim under the Fourth Amendment. Officer Vann is entitled to qualified immunity on Barton's wrongful arrest claim if he can show that probable cause existed for the arrest. *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998). "Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Hoover v. Walsh*, 682 F.3d 481, 499 (6th Cir. 2012) (internal quotation marks and citation omitted). The Sixth Circuit has defined probable cause as

"reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *Id.* (internal quotation marks and citation omitted). "The inquiry is an objective one; the existence of probable cause depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest regardless of the arresting officer's subjective state of mind." *Id.* at 500 n. 52 (internal quotations marks and citations omitted). "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (quoting *Pyles v. Raisor,* 60 F.3d 1211, 1215 (6th Cir. 1995)). In addition, probable cause "does not require an actual finding of a violation, rather, a probability or substantial chance of criminal activity is all that is required." *United States v. Collazo*, 818 F.3d 247, 254 (6th Cir. 2016) (internal quotation marks and citations omitted).

    Here, Porter told the 911 call operator and Manchester, when he arrived on the scene, that Barton had told her he shot a cat. Even the First Amended Complaint avers that Barton shot at a cat and threatened Porter than the next cat he saw in his yard would be a dead one. Based on the 911 call and Porter's report, Officer Vann had probable cause to believe that Barton had violated a local animal cruelty ordinance and similar state

statute, as well as a local ordinance prohibiting the reckless use of a firearm. Specifically, Lincoln Park City Ordinance 610.06 provides that "[n]o person shall beat, cruelly ill-treat, torment, overload, overwork or otherwise abuse any animal." (Doc. 28, Ex. R at PgID 252). Also, it is a felony under state law to violate Mich. Comp. Laws § 750.50b(2) which provides:

> (2) [E]xcept as otherwise provided in this section, a person shall not do any of the following without just cause:
>
> (a) Knowingly kill, torture, mutilate, maim, or disfigure an animal.
>
> (b) Commit a reckless act knowing or having reason to know that the act will cause an animal to be killed, tortured, mutilated, maimed, or disfigured.

Also, Lincoln Park Ordinance 692.08 also provides that "[n]o person shall recklessly, heedlessly or wantonly use, carry, handle or discharge any firearm without due caution and circumspection for the rights, safety or property of others." (Doc. 28, Ex. R at PgID 259). Accepting Barton's version of events, and based on these ordinances and statute, Officer Vann had probable cause to believe that Barton had committed an offense. Accordingly, Officer Vann is entitled to qualified immunity and summary judgment on the wrongful arrest claim.

### C. Excessive Force

The court next considers Barton's claim that Officer Vann used excessive force. Whether police used excessive force is judged under an objective "reasonableness" standard. *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015). Where an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citation omitted). "The assessment is fact-specific, based on the totality of the circumstances, and pay[s] particular attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade by flight." *Baynes*, 799 F.3d at 607(internal quotation marks and citations omitted).

Officer Vann testified at his deposition that Barton was arrested without any physical struggle, and neither he nor Manchester recalled

Barton indicating that he was in any pain. Barton did not seek any urgent medical treatment after his release. Also, Barton underwent an independent medical examination ("IME") by a board-certified orthopedic surgeon, who concluded that Barton had no "objective evidence of a traumatic injury to the right shoulder related to the event" at issue. (Doc. 28, Ex. M at PgID 268).

In response, Barton states. "Plaintiff *has alleged* that he complained of his injuries resulting from Defendant's seizure, arrest, and restraint of Plaintiff's person and that those complaints were ignored. As such, his excessive force claims survive summary judgment." (Doc. 33 at PgID 343). Barton has confused his burden of proof to survive summary judgment with the burden required to survive a Rule 12(b)(6) motion to dismiss. Mere allegations are insufficient to survive summary judgment. *Anderson*, 477 U.S. at 248, 252. Barton must come forward with evidence on which a jury could reasonably find for him. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252). Barton has not done so here.

In response, Barton also states that he "has furnished his own testimony and medical records supporting the testimony that he was injured." (Doc. 33 at PgID 342). But Barton has not submitted any medical records for the court's review. Barton has, however, directed the court's

attention to his deposition testimony (attached to Officer Vann's motion for summary judgment, not his own) which he claims support his allegations that the handcuffs were too tight and hurt his wrists. (Doc. 28-3 at 93, PgID 187). He also testified that he injured his shoulder during the arrest. Barton's deposition testimony fails to create a genuine issue of material fact on his excessive force claim.

While an excessively forceful handcuffing can give rise to an excessive force claim, *Morrison v. Bd. of Trustees*, 583 F.3d 394, 401 (6th Cir. 2009), Barton fails to establish a genuine issue of material fact in support of such a claim. "In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Id.*

Here, Barton testified at his deposition that he told the officers he could not put his arms behind his back when they were attempting to arrest him and telling him to stop resisting, but Officer Vann told him "Oh, we'll make it fit." (Doc. 28-3 at 93, PgID 187). Officer Vann then handcuffed Barton. Barton never testified that he told Officer Vann, or any other officer for that matter, that the handcuffs were too tight. Likewise, he never

testified that Officer Vann ignored his complaints.  Under these circumstances, Barton has not raised a genuine issue of material fact in support of his unduly tight handcuffing claim.

The court turns now to Barton's claim Officer Vann hurt his shoulder during the arrest.  In support of this claim, Barton relies solely on his deposition testimony that he complained to officers about his alleged injury in the police vehicle while he was transported to the station, and again later when he was jailed.  But Barton has not come forward with any medical evidence to support his claim that Officer Vann injured his shoulder during the arrest.  In addition, Barton did not seek urgent medical attention upon his release from jail for any injuries.  Also, the IME concluded that there was no objective evidence of a traumatic injury to his right shoulder as a result of the arrest.  In the absence of any medical evidence to support his claim of an injured shoulder to rebut the IME produced by Officer Vann, Barton has failed to raise a genuine issue of material fact on his excessive force claim.

### D. First Amendment Retaliation

Because Barton cannot show the absence of probable cause for his arrest, Officer Vann is also entitled to qualified immunity as to Barton's First Amendment retaliation claim.  The Sixth Circuit has identified three

elements that a plaintiff must prove to establish a retaliatory arrest claim: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Kennedy v. City of Villa Hills*, 635 F.3d 210, 217 (6th Cir. 2011).

An issue of law exists as to whether Barton must also prove a fourth element — that there was an absence of probable cause for his arrest — in order to prevail on his retaliatory arrest claim under the First Amendment. Although not identified by the parties, the issue is now before the Supreme Court. *Lozman v. City of Riveria Beach*, 681 F. App'x 746 (11th Cir. 2017), *cert. granted*, 138 S. Ct. 447 (2017). Circuit courts are split on this question with the majority holding that the existence of probable cause bars a First Amendment retaliation claim. *See Pegg v. Herrnberger*, 845 F.3d 112, 119 (4th Cir. 2017) (existence of probable cause bars First Amendment retaliation claim); *Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir. 2002) (same); *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (same); *but see Ford v. City of Yakima*, 706 F.3d 1188, 1196 (9th Cir.

2013) (an arrest motivated by retaliatory animus is unlawful even if supported by probable cause).

The Sixth Circuit has "defer[red resolution" of the question of whether the absence of probable cause is an element of an ordinary retaliatory arrest claim. *City of Villa Hills*, 635 F.3d at 217, n.4.; *but see Barnes v. Wright*, 449 F.3d 709, 717-20 (6th Cir. 2006) (requiring absence of probable cause as an element of retaliatory arrest claim where arresting agents initiated grand jury proceedings and only arrested the plaintiff after the grand jury had indicted him.) However, based on this uncertainty over whether the absence of probable cause is an element of a First Amendment retaliatory arrest claim, Officer Vann is entitled to qualified immunity on that claim. *See Reichle v. Howards*, 566 U.S. 658, 670 (2012) (not addressing circuit split on issue of whether the absence of probable cause is a necessary element of a retaliatory arrest claim but finding that arresting officers were entitled to qualified immunity because at the time the defendant was arrested "it was not clearly established that an arrest supported by probable cause could give rise to a First Amendment violation"). In sum, the existence of probable cause for Barton's arrest bars his First Amendment retaliatory arrest claim and Officer Vann is entitled to qualified immunity and summary judgment on that claim.

## IV. Conclusion

For the reasons set forth above, Defendant's motion for summary judgment (Doc. 28) is GRANTED as to all federal § 1983 claims of illegal entry, wrongful arrest, excessive force, and retaliatory arrest (Counts I, II, III, IV).

Having granted summary judgment on all federal claims, the court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3*)* over Plaintiffs state law claims of illegal entry and wrongful arrest, false arrest and imprisonment, malicious prosecution, and assault and battery (Counts V, VI, VII, VIII) . *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521-22 (6th Cir. 2007); *Musson Theatrical v. Federal Express Corp.*, 89 F.3d 1244, 1254-55(6th Cir. 1996). Accordingly, Plaintiff's state law claims are DISMISSED without prejudice.

**IT IS SO ORDERED.**

Dated: May 2, 2018

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on May 2, 2018, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk